OPINION OF THE COURT
Joseph Harris, J.
Defendant moves for an order suppressing tangible prop *304 erty seized pursuant to a search warrant, and oral statements made subsequent to arrest.
Defendant is charged with kidnapping in the second degree, a class B felony. A suppression hearing was held on August 21 and 25, 1980, and the court has examined the search warrant and the application upon which same was issued. The court makes the following findings of fact and conclusions of law. The findings of fact with respect to the motion, to suppress tangible property are made upon a pre- . ponderence of the evidence; the findings of fact with respect to the motion to suppress oral statements are made beyond a reasonable doubt.
On April 9, 1980, one Diane Drozdzal reported to the Albany Police that her approximately four-year-old son, Shawne Drozdzal, was missing from the front porch of her home at 585 Clinton Avenue in the City of Albany. An intensive investigation immediately ensued, during the course of which the police were informed by several identified persons that they had seen the little boy in the company of a small brown dog and a “Black or Puerto Rican male,” walking down Clinton Avenue. A confidential informant informed the police that said informant had also seen the above trio, that the informant knew the man and that he lived above Siciliano’s Market at 278 Clinton Avenue. A Darden hearing was held in camera, in which the informant confirmed the testimony of Officer Hendrix with respect to the information the informant had imparted to him, and the court examined into the reliability of the informant as of April 9. It appears that on a prior occasion the police had inquired of the informant of the whereabouts of a particular suspect and received correct information. The informant has no criminal record and is an upstanding citizen who was particularly concerned that the abducted child be found. The court finds both the informant and the source of the informant’s information (personal observation) to have been reliable.
The police went to 278 Clinton Avenue, knocked on the front door and received no answer. The ground floor of the building was formerly occupied by a grocery store, and unoccupied on April 9. On the second floor of the building *305 the police observed an open window, in which a little brown dog, meeting the description of the dog that had been seen in the company of the missing boy and the, then known to be, Puerto Rican male. The window next to the open window was closed and obstructed by some form of covering. From the room behind this window the police heard a small child crying. Officer Nowosielski climbed a fire escape and looked into the room behind the open window in which the little brown dog stood. He observed a meagre, disheveled room with a stuffed chair pushed against the entrance door to said room, obviously there for the purpose of obstructing entrance.
It was nighttime now. Obviously the missing infant was inside the house and in some kind of distress. It was obvious the child had been abducted, and by the looks of the room observed by Officer Nowosielski, not by some munificient benefactor. For what nefarious purpose the abduction had taken place, the police did not know, but under the circumstances they had the right and a duty to expect the worst. Officer Nowosielski entered through the open window; other officers entered through the third floor. A pair of feet were seen sticking out from under a pile of dirty clothing. Attached to those feet was the defendant, hiding. He was in a terrycloth robe, under which he was undressed. This missing infant was found in a bedroom.
 The defendant was arrested and fully and properly given his Miranda warnings, which he indicated he understood. He said nothing at this time and was taken to the police station for booking. Shortly after he arrived at the police station he made a spontaneous oral statement admitting he had taken the child. At no time did he request to remain silent nor to speak to an attorney. Besides finding defendant’s statement spontaneous, the court finds that the defendant further waived his Miranda rights and that this waiver was knowing, intelligent, and voluntary, not based upon promises, force, undue influence, coercion or threats. The court further finds there was probable cause for his arrest.
The court further finds there was probable cause for the entry, by the police into defendant’s apartment. *306 Were there exigent circumstances to justify the entry without a search warrant? You bet there were! The police did not enter the apartment to arrest the defendant — they entered to rescue, and perhaps “save”, from sexual molestation or worse, what they had every right to believe was a kidnapped infant, who was obviously inside the apartment, and obviously in distress. Payton v New York (445 US 573) is not applicable. There is no case that this court knows of that barred the police from entering that apartment.
Not only were there “exigent circumstances” to justify the entry without a search warrant — there was, in law, permission to enter. The Constitution, both of the United States and the State of New York, protects the rights of kidnapped children as well as the rights of kidnappers. Where there is probable cause to believe that a kidnapped child is in a building, as in this case, that kidnapped child has standing to, and impliedly does, give permission to the police to enter, whether the kidnapper likes it or not. In this case the permission to enter was indeed more than implied — it was express, manifested by the infant’s cries. The little child spoke in the only language he knew, the universal language of children in distress, and the police were duty-bound to honor it. Indeed, if the police, under the circumstances, had failed to immediately enter the apartment to rescue the child, they should be kicked off the force.
Subsequent to the above events, the police, upon the basis of the above events, obtained a search warrant from a local magistrate, pursuant to which they re-entered the defendant’s apartment and seized certain items of clothing the defendant had been seen by the aforedescribed witnesses to have been wearing when they saw him with the kidnapped child on Clinton Avenue. There was probable cause for the issuance of this warrant and said warrant and the execution thereof were in all respects regular and proper.
For the foregoing reasons, both the motions of the defendant to suppress the tangible property seized and the oral statements of the defendant to law enforcement officers are in all respects denied.